Madam Clerk, please call the last case of the day. 12-13-39-85 Steel & Machinery Transportation, Inc. v. Rasmere Health Hospital Counsel, you may proceed. Thank you, Your Honors. May it please the Court, Counsel, and Paul Crowder here this afternoon on behalf of the Appellant, Steel & Machinery Transportation. It's our contention, Your Honors, that the decision of the Circuit Court and the Commission, finding that there was an employer-employee relationship in this case, is against the manifest way to the evidence. Now, Your Honors, I just entered the case at this level. I didn't try the case or handle the Circuit Court appeals. So when I took a look at this case, one of the first things I did was try to go through the transcript, the case law, and read the decisions last, and then piece everything together and say, well, if I presume for a moment that the Commission or the Circuit Court is correct, which we disagree with, and I was counseling this employer, what would I have told them to do differently? And I can't come up with that answer after I take a look at this decision, after I look at the facts in the case law. It appears to me that the only thing the employer could have done differently was not comply with Federal law, basically ignore public policy and safety, and basically ignore a few instances of good common sense. Now, I understand that this manifest way standard is quite a burden. I've been able to listen to all these wonderful arguments this afternoon, and it is a daunting task. And I don't want to come up here this afternoon and just tell you, well, we have the real manifest way case. But I think we do. I want to take a look at these facts. Before we get through all the facts, I think we know the facts, but this is a difficult area of the law because the Illinois Supreme Court has said that. You've read the case. You've read Roberson. One of the leading cases, it says, nevertheless, the question of whether a claimant is unemployed remains one of the most vexatious in the law of workers' compensation. Notably, as here, many jobs contain elements of both unemployment and an independent contractor relationship. Okay? But then they go on to cite, and it's also cited in the Kirkwood case, where the evidence is well balanced, it is the commission's province to weigh the evidence and decide among competing inferences, and its decision will be upheld. When the facts of a particular case, and this is, I think, key here, are susceptible to either interpretation, the commission alone, as defined in effect, is empowered to draw inferences and evaluate the credibility of the witnesses in arriving at a decision. So I think, in summary, it's fair to say the case law recognizes these are very difficult cases. Very rarely do you have a case where it's totally clear control, lack of control, it goes back and forth. But particularly, this is an area where I think there's a lot of deference to be given to the commission's finding. So I think it's a pretty high hurdle to get over. Not to dissuade you from your argument, but you're starting out with the recognition that the commission gets a lot of deference in this area. I do not disagree at all. That's absolutely correct. And as I stated, the manifest weight standard is quite a burden. It's been discussed with all of these cases this afternoon to overcome. I realize this Court hears quite a few from across the street. Well, let me try and hone in a couple of things. Not to throw you off your stride. No, that's okay. Not to give you a chance to get your argument. But the case law also says this, and I think this is fair. There's a number of factors, but there's two that is paramount in the Court's opinion. The right to control the work and the nature of the work the case law specifies specifically are the two most important considerations. So tell me why the company here didn't clearly have the right to control the claimant's work. Absolutely. Absolutely, Judge. And that goes right into the – there's eight factors that I'm going to argue, and it goes right into direction and control. Number one, there was a discussion about this driver exclusively driving for SMT. And what I'd point out in some of these other cases, you see a longstanding relationship. I believe Roberson is the one where they almost kind of do a shift into the shelves. Well, you're an employee. No, now you're an independent contractor. This gentleman had his employment relationship start with this company in April of 2005. His accident occurred in June. It's about two and a half months. So I don't think that's the sort of situation analogous to those other cases, where you can say there's some longstanding relationship between the two of them. The second factor, there's a reference to there being a number of conditions for this gentleman. They have to haul for another entity. And I believe the record indicates that that other condition is one, and it's a credit check, which makes sense, because this employer, or SMT, this entity, had to have insurance on the equipment. And so they were entitled certainly to do a credit check. But say there's a number of conditions. There were not a number of conditions. I believe it referenced a credit check. Well, he had to have bobtail insurance for when he drove for somebody else, right? That is correct. That is true. And so I'm not, I don't quite understand your argument about why they would have to have a credit check because of insurance. Well, because they did have insurance on that vehicle at some times. I think it remains. I mean, I don't know what the insurance contract said, but at least according to the record, you know, they insured him when he was driving for them. I understand the bobtail should fill in the gap. But if he's in an accident hauling for another entity, I think it's a pretty safe assumption that that other party is going to still probably come after SMT. And I think it's their due diligence to make sure that whoever is affiliated with is going to at least have some insurance of their own just to cover themselves. Well, that's action taken on the part of the employer here that would then lend towards the employee's analysis. It's an employer-employee relationship as opposed to independent contractor status. You, you know, started out saying you don't know how you would have advised the employer differently here. Is it particularly relevant as to whether or not, you know, from a result standpoint, we find it's independent contractor versus employer-employee relationship? I mean, it's not a results-driven analysis here. We can only take the factors that are evident within the case and make that determination. Here there are factors that weigh in favor of finding an employer-employee relationship when it comes down to the ability to control, which Justice Hudson alluded to earlier. So, I mean, there are factors here that do weigh in favor of that employer-employee relationship. Don't you agree? I respectfully disagree there are factors that show direction and control. Again, the decision talked about a number of conditions to haul for another entity, and we just talked about that. Before we get into the conditions of another entity, here is the strongest, I think, one of the strongest factors that establishes an employer-employee relationship. There was an agreement signed between the company and the claimant, correct? Yes. Did the agreement not expressly provide, and I'm quoting, the claimant's equipment was for Respondent's exclusive possession. Respondent, the company's exclusive possession, control and use for the duration of the agreement. How more controlling could it be? Well, my understanding, and I think it's been discussed in some of these other cases, is that that's all in accordance with Federal law for the Department of Transportation. I knew they would say that. But they have to put it in there. And there are cases that say the fact that it's in there to comply with Federal regulations did not diminish the fact that it exercised control. We still have to consider it as a factor either in favor or not in favor. I understand that. But, I mean, again, then they'd have to ignore Federal law. I mean, by not complying, it's almost to the point where we're almost saying, well, then, everybody is going to be an employee. You cannot have an independent contractor. You could say it can't ever be considered to be an employee because Federal law says this. Therefore, you know, they can't be our employee. Well, I think there's some good examples in other cases. I mean, the Ware case where the guy worked for Shell, and they're having him shave, and they're telling him, here's how you clean your truck, and here's where you go. And even in the other case of Roe versus Lane. Can I ask you a question? Yes. Wasn't there a testimony that Spiro called this man every two hours to check on his location, that Spiro provided him with specific instructions to the address he was delivering on the night of the accident, and that your client imposed delivery deadlines? Isn't that an issue of control? Well, that testimony came directly from the Petitioner. I don't believe that was corroborated by Spiro. They called him every two hours. Did anyone contradict it? Who contradicted that testimony? No one corroborated it. So what? He testified to it. That's true. He testified to that. Did anyone contradict it? If it's uncontradicted testimony, and it's taken as true by the Commission, which evidently they did, that's an issue of control. And that he testified that he dare not refuse a load or even face the consequences such as termination or not being allowed to haul for your client for a period of time. And no one contradicted that. Respondents, witness to witness, did testimony that they regularly monitored the location of the drivers. But I don't know. Even assuming there was contradictory evidence, it was up to the Commission to determine who they wished to believe. We're giving you the strongest point. And the problem is, and I think what we're trying to say is, you can't deny there's an issue of control in this record. There's a lot of it. There's also a lot of an issue that there was no control and that he was an independent contractor. But under the Supreme Court cases, that's exclusively for the Commission to decide, not us. Here's another factor I'd like you to explain. And you said that there is certainly some evidence, if you will, that the claimant could, you know, haul for other people, right? And that, admittedly, would be a factor of an independent contractor. But look at this agreement here. What does it provide? And I want you to answer this. Tell me if I'm wrong. The other motor carrier for him to be able to haul had to have an agreement with the respondent and the fact the claimant had to obtain a release from the company to drive for another carrier. Is that true? I believe the paperwork in the contract accurately, the contract that was entered reflects the agreement between the parties, Judge. Well, if he has to have a release, how is he independent of anything? Well, again, I think that gets back to the point that I was talking about as far as the credit check goes. I mean, the other factors to consider, and, again, I understand the points raised, but it's also a lot of pure testimony from the claimant. I understand that's the agreement. You have an agreement that says that either party can terminate this agreement for any reason at any time after 30 days, if it's an effective date. That's what the agreement says. That's tantamount to employment at will. That's indicative of an employment relationship. That's what WER says. Nothing at will employment arrangements are generally determined to be employment relationship. This wasn't they hired him for a term or a single job. We hire you to deliver just to here one time, and we'll pay you X number of dollars a mile, and it's your truck and all the rest, but we'll comply with the Federal guidelines and put our names on the side of the truck. I mean, the Commission may very well have terminated this. An arrangement like that is simply not employment. That's an independent contractor. But when you've got the guy taking various jobs, various assignments, and you can terminate him any time you want after 30 days, doesn't that generally suggest that he's your employee and not an independent contractor? I believe you just said, Judge, that was mutual between the two of them. So what? Employment at will is always mutual. What, the guy can't quit? We have slavery now? No. It was one-sided. Well, wait a minute. You don't understand. Employment at will is always two-sided. You can always quit. I understand that. But I believe some of the cases also discuss that that actually, I believe, is a fact that supports an independent contractor relationship. Where would make it an employment arrangement? Let me do this. Instead of you spending all your time answering our questions, and you've done it good, tell us succinctly why you believe the evidence establishes that he was an independent contractor. Well, actually, I would rather have you tell us why it's against the manifest weight of the evidence that he's not, he's an employee. Give us your summary. All right. I'll give you my summary. You've been trying, haven't you? That's okay. That's okay. That's why I'm here. I'll go back to the beginning of where I started. Number one, the employer would have had to basically not comply with Federal  I understand what the cases say, that just because you're complying with Federal law doesn't mean that you're basically off the hook for an independent contractor relationship. So, number one, employer, ignore Federal law, and you might have a chance. Number two, let's not do any safety checks. Let's not do any background checks. And, employer, you might be off the hook. Number three, as far as how this relationship is going to work, we're going to tell you, Mr. Zivitkowski, to go pick up this load in Wisconsin, but we're not going to tell you when you have to drop it off. We're just going to tell you that they want something there by a certain date, and that's it. And we're not even going to give you a certain date. We're just going to tell you to take it to Wisconsin. It seems that if they did all of those things, they were going to get it. You wouldn't have a business, would you? Well, no. That's my point. It seems to me that that's... Is that relevant? Is that relevant? Is that relevant to the question of control? The taxicab companies have been yelling for years that the position that the Illinois Supreme Court has taken on an employment relation versus independent contract relationship and relate to taxicabs because of control is just out of the question. They've eliminated everything. And the Supreme Court said we don't care what you think of our opinions. It is our opinion. You will exercise sufficient control for the purposes of workers' compensation. They are your employees. We don't care what you call them, and I don't care what you tell the internal revenue you call them. They don't care. And so I suppose my statement to you is simply all of the things that you tell me are extremely important if I own your business. I don't want to be responsible for these people. I don't have to pay comp insurance for them. I don't want to pay FICA for them either. And there's a lot of things I don't want to pay for them. So I want to construct this independent contract relationship, but I've got to comply with Federal law. And in order to comply with Federal law, I've got to do all of these things that are an issue of control. And unfortunately, in this State, we turn around and say, we don't care if you didn't comply with Federal law. The question is, are they an issue of control? Force them to take a drug test. Force them to fill out an application. Force them to go to an orientation. Tell them who they can haul with and who they can't haul with. Tell them when the delivery has got to be made. Where the delivery has got to be made. Terminate them at will. All of these things are an issue of control. And I'm back to the problem that if the evidence is on both sides of the aisle, we don't have any discretion at all. We've got to affirm the commission. If you gave us your three points, give us your next couple of points. Well, I'll follow up on what Justice Altman was just saying. I think that to make it compensable and to take it a step further from there, it would have to be like the other cases. They didn't give them a uniform. They didn't give them tools. They didn't withhold taxes. They didn't say get from Indiana to Wisconsin going this way. We're going to track you like a plane on a radar map. Those are all the things that I think takes that next step. And I understand and acknowledge that at that point you are an employee. You're no longer an independent contractor. But that's not the facts in this case. The facts in this case show an employer that did the minimum they had to do to comply with federal law, be a good citizen of the state, but not step over the line and take the next steps that they did in the Ware case and they did in the Roberson case. And if you take a look at all the testimony and you take a look at those factors, I believe that's why it shows the commission's decision was against a manifest way of the evidence and why it should be reversed. Thank you. Thank you, counsel. Counsel, you may respond. May it please the court, good afternoon again, counsel. Osvaldo Rodriguez for the petitioner defendant. Do you feel more relaxed on this side of the case? Pardon me? Do you feel more relaxed on this side of the case? Yes, a little bit. Before you begin, and I'm sorry to just remember where you were going on this, but there were third-party claims, unrelated litigation, well, related litigation, but there were claims made against SMT by a utilities company and a concrete company, right? That is correct, Your Honor. Unfortunately, I don't know. I did not handle that aspect of any of that. What I was going to ask you, and maybe the opposing counsel will know this, whether or not there was any adjudication in any other judicial proceeding establishing either an employer employee relationship or an independent contractor? There were no other adjudications. Okay. Thank you. As the Court has stated, two issues, the right to control and the nature of the business. I think the right to control has been firmly established. No matter what you call this document, it dictates what this driver could do for this company and what it, in fact, must do. And secondly, my client complied with those conditions of employment. The other aspect that was not talked about was the nature of the business or wasn't talked about much, nature of the business or the work. Steel and machinery transport company, that is all they do. That is all, in fact, my client did for them. Did it only for this company. And, of course, followed state and federal regulations. Just like any other driver, whether you call that driver an employer or independent contractor, you must follow those rules once you step into that truck. And, in fact, my client followed all the conditions laid out by the agreement since he stepped foot in the cab and drove for this company. And, again, the actions of this petitioner were strictly under the control of the respondent. It was under the control. It was under the direction and for the benefit of this company. And, again, as I mentioned, the control was actual and the agreement also implies the exercise, the ability to exercise this control, apart from the fact that they did have actual control. And, again, my client complied with all those factors. The Industrial Commission decision considered testimony of various witnesses. They made an exhaustive listing pro and con. The circuit court also, in their order, did the same thing and came to the conclusion where we started today, that though one appellate court case or Supreme Court case may track certain factors, at the end of the day, it's not a matter of which case was tracked. It's a matter of manifest weight, and that is solely the province of the commission. And I do not think that the facts in this case are disputed. This is what controlled, this agreement is what controlled my client's actions. He complied with them. He drove exclusively for them. And the Industrial Commission properly found that this gentleman was an employee and there was no other dispute in this case. No other dispute. Once they found that, the claim is compensable. I thank you for your time. Thank you, counsel. Counsel, you may reply. Briefly, counsel discussed the fact that they only were in the business of hauling steel and machinery. I believe there was testimony that they could haul other materials as well from one of the witnesses for SMT. And, again, when he talked about the exclusivity between Mr. Sivitkowsky and steel machinery, I'd, again, point out that it was only two and a half months. This was not a longstanding relationship between the two. That's my response to the points that were just raised. And, again, direction and control, which has been the key focus here, again, I, again, would submit to the Court that aside from compliance with Federal law, that there was no uniform withholding taxes, discussing which routes to take. And as far as the point about whether or not he had to get permission for another employer or another company to take his equipment for him to drive for, that was with regard to the equipment, not him. The equipment that he was driving had to be accounted for by SMT. Really, that appears to be the only factor that he suggested aside from compliance with Federal law. But if you take a look at all the factors, and especially take a look at the things that were cited in the Roberson case and the Ware case, it's clear that this case is very different than those two. One, we've got a driver for Shell, who clearly is a driver for the company. And the other one, kind of a shell game. But that's not this type of case. For those reasons, we believe the evidence is against the manifest way of the evidence. And we respectfully request a finding that Mr. Sivitkowsky was an independent contractor, not an employee of steel machinery. Thank you, Your Honors. Thank you, Counsel Ball, for your arguments in this matter. It will be taken under advisement. A written disposition shall issue. The court will stand in recess until 9 o'clock tomorrow morning.